NOTICE
Decision filed 11/03/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170408-U

NO. 5-17-0408

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MWENDA MURITHI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 14-MR-111 |
| | ) | |
| SALVADOR GODINEZ, in His Official | ) | |
| Capacity as the Director of the Department | ) | |
| of Corrections; SHERRY BENTON, in Her | ) | |
| Official Capacity as a Member of the | ) | |
| Administrative Review Board; KIMBERLY | ) | |
| BUTLER, in Her Official Capacity as | ) | |
| Warden of the Menard Correctional Center; | ) | |
| ROBERT HUGHES, in His Official Capacity | ) | |
| as an Adjustment Committee Member of the | ) | |
| Department of Corrections; and TERRANCE | ) | |
| JACKSON, in His Official Capacity as an | ) | |
| Adjustment Committee Member of the | ) | |
| Department of Corrections, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's decision that the defendants complied with its previous order to give the plaintiff a new hearing on the amended disciplinary report submitted against him is affirmed where the plaintiff failed to show that the

1

disciplinary proceedings violated his due process rights and/or the Illinois Department of Corrections' discipline and grievance regulations.

¶ 2 In December 2014, the plaintiff, Mwenda Murithi, an inmate in the Illinois Department of Corrections (Department), filed a *pro se* complaint for *mandamus* relief against the defendants, Salvador Godinez (the Department's director), Sherry Benton (a member of the Administrative Review Board), Kimberly Butler (warden of the Menard Correctional Center), Robert Hughes (an adjustment committee member of the Department), and Terrance Jackson (another adjustment committee member). In the petition, he argued that the defendants violated his due process rights and did not follow the Department's regulations in disciplinary proceedings for his January 24, 2013, charges. Following a bench trial, the circuit court of Randolph County entered an order granting the plaintiff's requested relief and ordered the defendants to conduct a new disciplinary hearing with all procedural due process. Subsequently, the plaintiff filed a *pro se* motion requesting a default judgment because the defendants failed to comply with the court's order, as they had not yet given him a new hearing. The defendants then held the hearing and filed a notice of compliance with the court. Over the plaintiff's objection, the court concluded that its order had been complied with and closed the case. On appeal, the plaintiff argues that, although he received a new disciplinary hearing as requested, the defendants failed to comply with the court's order because his due process rights were violated at that hearing. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On January 24, 2013, the plaintiff was served with a disciplinary report, which charged him with aiding and abetting an assault and "security threat group" or "unauthorized organizational activity" (gang activity). According to the report, in December 2012, a physical altercation occurred between Brandon Allsup, another inmate and self-admitted member of the Spanish Gangster Disciples, and an identified member of the Gangster Disciples. As a result of this altercation, members of the Latin Folk group determined that Allsup violated a Latin Folk rule by fighting with a member of the Gangster Disciples without approval. Thereafter, on December 22, 2012, Allsup was physically assaulted in the unit B showers. The report asserted that the plaintiff, who was an identified member of the Imperial Gangsters, a group under the Latin Folk umbrella within the Department, assisted in that assault. The report indicated that confidential sources corroborated that the plaintiff was involved, but the names and identities of those sources were withheld for the safety and security of the facility and for the individuals involved. The report noted that the sources were deemed credible due to their corroborated statements given during the investigation.

¶ 5     On January 28, 2013, the plaintiff appeared before the adjustment committee and subsequently received a copy of the committee's decision finding him guilty of the charges. In February 2013, he filed a grievance concerning the disciplinary proceedings, asserting that the investigative ticket did not inform him of the possible charges; the confidential informants' statements conflicted; he had not participated in the physical altercation and was not at the showers that day, which could be corroborated by his former cellmate; and

3

he believed that information was purposely left out of the disciplinary report. In November 2013, the Administrative Review Board issued a recommended decision stating that the January 2013 disciplinary report should be remanded back to the reporting officer to include additional, specific information to substantiate the cited charges, the amended report should be served on the plaintiff, and it should be reheard. The Director concurred with the recommended decision.

¶ 6    On January 17, 2014, the disciplinary report was rewritten. On January 20, 2014, the plaintiff submitted a grievance regarding the Department's failure to timely serve the amended report on him. Thereafter, on January 29, 2014, the plaintiff appeared before the adjustment committee for a hearing on the amended disciplinary report. He requested a continuance of the hearing because he was not served with a copy of the amended complaint, but his request was denied. At the hearing, he pled not guilty to the charges, claiming that he never went to the showers that day and that the footage from the video camera in front of the showers would prove that he was not there. Thereafter, the adjustment committee found him guilty of the charges, and the decision was served on the plaintiff.

¶ 7    On February 23, 2014, the plaintiff submitted a grievance about the proceedings, complaining that the amended disciplinary report was identical to the original report; he submitted his written statement without the benefit of reviewing the rewritten report because it was not timely served on him; his written statement included names of witnesses on his behalf, but the adjustment committee's final summary indicated that he never requested witnesses, and only part of his statement was noted in the final summary; the

4

confidential informants' statements were contradictory; the amended disciplinary report did not contain additional information that substantiated the charges; and the adjustment committee adopted the amended disciplinary report in support of its guilty finding.

¶ 8 On April 11, 2014, the grievance officer recommended that the plaintiff's grievance be denied, noting that the amended disciplinary report was served on him on January 20, but he refused to sign for it; the adjustment committee lieutenant advised that the committee did not receive a written request or statement from the plaintiff nor did he request a continuance; there was no witness request identified on the bottom of the disciplinary report; the two reports were not identical; and a review of the master file showed that there were no witness request documents or written statements attached to the amended report or the final summary (although there was a written statement attached to the first report). Thus, the officer concluded that the adjustment committee's decision relied on sufficient evidence to be reasonably satisfied that the plaintiff was guilty of the infraction. The chief administrative officer concurred with this recommendation. Then, in July 2014, the Administrative Review Board returned the grievance to the plaintiff, stating that the issue had been previously addressed.

¶ 9 On December 4, 2014, the plaintiff filed a *pro se* petition for *mandamus* relief in the circuit court, in which he contended that the January 2014 disciplinary proceedings violated his right to due process and the Department's regulations because he was not served with a copy of the January 2014 amended disciplinary report before the hearing; the adjustment committee failed to interview his former cellmate, who would corroborate his statement that he never went to the showers that day; the adjustment committee erroneously claimed

5

that he had not made any witness requests; the testimony from his witness was crucial because neither of the confidential sources claimed to have witnessed the alleged assault or his participation in it; the confidential sources' statements were contradictory; the adjustment committee did not review the video footage of the front of the showers and did not provide a reason for not doing so; the January 2014 final summary did not provide an adequate statement of the reasons for the committee's decision and was instead identical to the disciplinary report; the summary contained false and inaccurate information; and the January 2014 decision was not supported by sufficient evidence.

¶ 10    On March 6, 2017, after conducting a bench trial, the circuit court entered an order granting the plaintiff's request for relief.  In the order, the court held that the plaintiff did not receive the procedural due process that he was entitled to pursuant to *Wolff v. McDonnell*, 418 U.S. 539 (1974), because he did not receive advance notice of the amended charges heard in January 2014 and did not have an opportunity to call witnesses in his defense.  Thus, the court ordered the defendants to provide the plaintiff with a hearing on the amended charges and provide all procedural due process.

¶ 11    On July 24, 2017, the plaintiff filed a motion for default judgment and/or writ of *certiorari* for the defendants' refusal to comply with the circuit court's order.  In the motion, the plaintiff contended that more than 120 days had passed since the entry of the order, and he had not received a new disciplinary hearing on the amended charges.  He requested that the court grant his motion for default judgment and overturn the finding of guilt.  On August 2, 2017, the court interpreted the plaintiff's motion as a petition to show cause and entered an order to show cause.  On September 11, 2017, the defendants filed a

notice of compliance with the court's order, stating that the plaintiff received a new disciplinary hearing on August 17, 2017, as ordered. Thus, the defendants contended that they had complied with the order.

¶ 12 In support of their notice, the defendants attached, among other things, the disciplinary report served on the plaintiff on August 11, 2017, the plaintiff's written statement dated August 17, 2017, and a copy of the adjustment committee's final summary report for the August 2017 hearing. In the plaintiff's written statement, he indicated that he was not at the showers on December 22, 2012; his former cellmate would corroborate this; there was a surveillance camera in front of the entrance to the showers, and the camera footage would conclusively show that he was not at the showers that day and did not participate in the assault; although the confidential sources claimed four individuals participated in the assault, it had been determined that one of those individuals did not go to the showers that day; the confidential sources' statements were contradictory as one claimed the assault lasted 30 seconds while another claimed that it lasted 3 minutes; and none of the confidential sources claimed to have witnessed the assault.

¶ 13 As for the committee's final summary report, the report indicated that the plaintiff pled not guilty, claimed he was not at the showers that day, and claimed that his former cellmate would corroborate that he was not there. However, the report also indicated that the plaintiff's former cellmate was contacted for a statement, but he did not recall anything from that day. The report noted that Allsup was called as a witness, but he also did not recall anything. The report indicated that the adjustment committee found the plaintiff guilty of aiding and abetting a physical assault of an inmate.

7

¶ 14    In providing the basis for its decision, the adjustment committee explained that the plaintiff was placed on investigative status after information was received that he assisted in the Latin Folk physical assault of Allsup.  During the investigation, it was discovered that Allsup was involved in a previous fight with an identified member of the Gangster Disciples, without approval, which violated the Latin Folk rules.  Consequently, Allsup was physically assaulted in the showers.  The committee further explained that confidential sources corroborated that the plaintiff was involved in the assault; those sources were withheld for the institution's safety and security; the offender tracking system documented the plaintiff as a member of the Imperial Gangsters, a group under the Latin Folk umbrella; the plaintiff was positively identified by institutional graphics; and the unit B shower log verified that the plaintiff and Allsup were in the showers that day.  The following disciplinary action was imposed: one year of C-grade status, one year in segregation, revocation of six months of good-conduct credits, one year of commissary restriction, and a six-month visitation restriction.

¶ 15    On September 18, 2017, the circuit court held a telephone conference and was advised that the disciplinary hearing had occurred.  The docket entry for that date indicated that no further action was needed, and the plaintiff's objections to the defendants' notice of compliance was on file.[1]  On September 20, 2017, the court's docket entry indicated that it reviewed the file, the previously ordered hearing had occurred, the action was closed,

_____

[1]Although the plaintiff has supplemented the record on appeal with his leave to file an additional motion with documentation of his objection to the defendants' notice of compliance, the actual objection referenced by the court in the docket entry was not included in the supplemental record.

and the docket entry was the final judgment as to all litigants. The court's September 28, 2017, docket entry stated that there was a document received from the plaintiff, and the court reviewed the file, but there was no action taken.[2] On October 6, 2017, the court's docket entry indicated that the plaintiff's motion for reconsideration was on file.[3] The court's October 12, 2017, docket entry indicated that the court reviewed the file, but there was no action taken pursuant to its prior docket entries of September 20 and 28, 2017. The plaintiff appeals.

¶ 16                              II. ANALYSIS

¶ 17    The plaintiff contends that the defendants violated his due process rights at the August 17, 2017, disciplinary hearing where (1) he was denied an impartial adjustment committee; (2) the adjustment committee failed to consider exculpatory evidence, *i.e.*, an affidavit from Allsup wherein Allsup stated that the plaintiff did not assault him on the day in question, and the camera footage from in front of the showers, and the final summary report did not contain any reasoning for why this evidence was not reviewed and considered; (3) the adjustment committee failed to summarize the plaintiff's written statement outlining his objections and defense in the final summary report; (4) the final summary report was identical to the disciplinary report that had previously been found insufficient to substantiate the charges against him; and (5) the record was insufficient to support a finding of guilt.

---

[2]The document received on September 28, 2017, was also not part of the record on appeal.

[3]Although the docket entry indicated that the plaintiff had filed a motion for reconsideration, there was no such motion in the record on appeal.

¶ 18                                    A. *Mandamus*

¶ 19    *Mandamus* is an extraordinary remedy that may be used to compel a public officer

to perform his official duties that do not involve an exercise of discretion.  *Lewis E. v.*

*Spagnolo*, 186 Ill. 2d 198, 229 (1999).  A petition for *mandamus* will be granted only if

plaintiff establishes a clear, affirmative right to relief, a clear duty of the public official to

act, and a clear authority in the public official to comply with the writ.  *Hadley v.*

*Montes*, 379 Ill. App. 3d 405, 407 (2008).  A plaintiff bears the burden of demonstrating a

clear, legal right to the requested relief and must set forth every material fact necessary to

show that he is entitled to *mandamus* relief.  *Lucas v. Taylor*, 349 Ill. App. 3d 995, 998

(2004).    An  allegation  of  a due-process-rights violation states  a  cause  of  action

in *mandamus*.  *Dye v. Pierce*, 369 Ill. App. 3d 683, 687 (2006).

¶ 20                          B. Due Process Requirements

¶ 21    "Illinois inmates have a statutory right to receive good-conduct credits, and thus

they have a liberty interest entitling them to procedural safeguards under the due-process

clause of the fourteenth amendment."  *Lucas*, 349 Ill. App. 3d at 1000.  However, the full

array of rights due to a defendant in a criminal prosecution does not apply to an individual

subject to a prison disciplinary proceeding.  *Wolff*, 418 U.S. at 556.  Instead, the process

required in prison disciplinary proceedings includes the following: (1) notice of the charges

at least 24 hours prior to the hearing, (2) the opportunity to appear before an impartial

decisionmaker, (3) an opportunity to call witnesses and present documentary evidence

when consistent with institutional safety and correctional goals, and (4) a written statement

by the factfinder of the evidence upon which it relied and the reasons for the disciplinary

10

action. *Id.* at 563-71; *Knox v. Godinez*, 2012 IL App (4th) 110325, ¶ 16; *Piggie v. Cotton*, 342 F.3d 660, 662 (7th Cir. 2003). Further, the findings of the prison disciplinary board must be supported by some evidence in the record. *Knox*, 2012 IL App (4th) 110325, ¶ 16.

¶ 22                    C. Impartial Adjustment Committee

¶ 23   Adjustment committee members are entitled to a presumption of honesty and integrity. *Piggie*, 342 F.3d at 666. Thus, the constitutional standard for proving impermissible bias is high. *Id.* Members will not be deemed biased simply because they presided over a prisoner's previous disciplinary proceeding. *Id.* There will also not be a due process violation where the prison disciplinary panel includes an official with whom the accused inmate has had a factually unrelated grievance in the past. *Adams v. Gunnell*, 729 F.2d 362, 370 (5th Cir. 1984). However, due process does prohibit officials who are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, from serving on the panel. *Piggie*, 342 F.3d at 667.

¶ 24   Similarly, the Department's discipline and grievance regulations prohibit any person who initiated the allegations that serve as the basis for the disciplinary report, conducted an investigation into the allegations, witnessed the incident, or is otherwise not impartial from serving on the panel. 20 Ill. Adm. Code 504.80(d). An offender who has any objection to a member of the committee based on a lack of impartiality must raise the matter at the beginning of the hearing. *Id.* The committee then must document the basis of the objection and its decision in the final summary. *Id.*

¶ 25   Here, the plaintiff contends that he was denied an impartial adjustment committee in his August 2017 disciplinary hearing because one of the members sitting on the

11

committee at his hearing was not impartial. He asserts that, in another unrelated disciplinary proceeding, he had filed a grievance complaining that Kendra Wolf had interviewed his cellmate, who admitted guilt, but she never mentioned the admission of guilt in her final summary report. As a result of this, he requested that Wolf not serve on any future disciplinary committee that he appears before. He indicated that he forwarded this request to the Administrative Review Board. However, while the plaintiff claims that he objected to Wolf serving on the committee in the August 2017 proceedings, there is nothing in the record to indicate that such an objection was made in accordance with the Department's regulations, *i.e.*, at the beginning of the hearing of the specific proceedings. Rather, as noted above, he made this objection in a previous grievance pertaining to a different disciplinary proceeding. A request submitted in a previous grievance does not show that the plaintiff raised a specific objection based on Wolf's lack of impartiality at the beginning of the hearing on the charges at issue here.

¶ 26 Moreover, even if the plaintiff had successfully challenged Wolf's involvement in the committee, he failed to demonstrate that she was not impartial. As previously stated, committee members are entitled to a presumption of honesty and integrity and will not be deemed biased simply because they presided over a prisoner's previous disciplinary proceedings. Unlike the committee member in *Epstein v. Lane*, 189 Ill. App. 3d 63, 65 (1989), the case the plaintiff relies on, there is no indication that Wolf played a role in initiating the charges against him. There is also no indication that she witnessed the incident, conducted the investigation into the incident, or was otherwise not impartial.

12

Consequently, we find that the plaintiff has failed to show that there was a due process violation in allowing Wolf to serve on the disciplinary committee.

¶ 27                                    D. Exculpatory Evidence

¶ 28    The plaintiff contends that his due process rights were violated because he was denied an opportunity to present exculpatory evidence. Specifically, he asserts that he requested that the adjustment committee review the footage from a camera set up in front of the showers, but the committee failed to review the requested footage and did not state a reason for not doing so. The plaintiff also contends that the committee disregarded Allsup's affidavit (dated January 28, 2013) wherein Allsup stated that the plaintiff never participated in "any type of violation that caused [him] any physical harm" on the day in question.

¶ 29    An offender's due process right to present documentary evidence is limited and does not include the right to present evidence that would be unduly hazardous to institutional safety or correctional goals. *Wolff*, 418 U.S. at 566. Offenders also do not have a right to present evidence that would be irrelevant, repetitive, or unnecessary. *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). The Department's regulations allow an offender to make any relevant statement or produce any relevant documents in his defense. 20 Ill. Adm. Code 504.80(f)(1). Thus, the adjustment committee has the discretion to deny evidence that would be irrelevant, cumulative, or would jeopardize the safety or security of the facility. See *Ford v. Walker*, 377 Ill. App. 3d 1120, 1125 (2007).

¶ 30    Here, the plaintiff asserts that, on the bottom of his disciplinary report and in his written and oral statements, he requested that the adjustment committee review the video

13

footage, which would purportedly show that he did not enter the showers on the date in question. However, there is nothing in the record to indicate that this video footage actually existed and, if it did, that it would have been exculpatory. Thus, we conclude that the plaintiff has failed to demonstrate that he was denied an opportunity to present relevant evidence or that the adjustment committee's summary failed to state a basis for disregarding exonerating evidence.

¶ 31 Also, the plaintiff takes issue with the fact that the adjustment committee disregarded Allsup's affidavit and failed to provide a reason for not considering the affidavit when making its final decision on his guilt. However, we note that, although the plaintiff has included the affidavit in his appendix to his appellate brief, that affidavit was not part of the record on appeal. Thus, there is no indication in the record that the plaintiff actually submitted Allsup's affidavit to the adjustment committee at his August 2017 hearing. Also, we note that even though the affidavit was signed by Allsup, it was not a sworn affidavit. Since the affidavit is not a sworn statement, it is a nullity. See *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493-94, 497 (2002) (statements in writing not sworn to before any officer do not constitute an affidavit, and therefore unsworn affidavits are a nullity). Moreover, as noted in the August 2017 final summary report, the adjustment committee contacted Allsup at the plaintiff's request, and Allsup did not recall the incident at that time.

¶ 32                              E. The Written Statement

¶ 33    The plaintiff contends that the adjustment committee's August 2017 final summary report violated his due process rights and the Department's regulations. He claims that the report was deficient because it did not include a summary of his oral and written statements.

¶ 34    To satisfy the written statement requirement, the statement of reasons should be sufficient to enable a reviewing body to determine whether good-time credit has been revoked for an impermissible reason or for no reason at all. *Cannon v. Quinley*, 351 Ill. App. 3d 1120, 1132 (2004). While detailed findings are not required, there must be something more than mere conclusory statements. *Id*. Federal courts have similarly held that the written statement requirement should not be onerous. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). The written statement requirement is meant to ensure administrative accountability and meaningful review. *Id*. "The statement need only illuminate the evidentiary basis and reasoning behind the decision." *Id*. Thus, federal courts have repeatedly upheld the sufficiency of written statements that indicate only what evidence was relied on to make the decision and why. *Id*.

¶ 35    Moreover, the Department's discipline and grievance regulations state that the adjustment committee shall prepare a written record that includes, among other things, a summary of oral and written statements and other evidence presented; a statement of the reasons for finding the inmate guilty, which includes setting forth the basis for disregarding exonerating evidence that was presented; and the disposition of the charges, the recommended disciplinary action, and the reasons for the recommended disciplinary action. 20 Ill. Adm. Code 504.80(m). The adjustment committee may also consider

information from a confidential source if it finds that the witness's identity must be withheld for security reasons and that the information is reliable. *Id.*

¶ 36   Here, the final summary report was not deficient in that it provided a sufficient statement of the reasons for its decision finding the plaintiff guilty and summarized the plaintiff's statements in his defense. The report referenced the contents of the disciplinary report, described the incident upon which the charges were based, identified the plaintiff as one of the offenders involved in the incident, and identified the evidence relied upon in making the decision. In particular, the report explained that the committee's decision was based on information received during the investigation, which included statements from confidential sources who corroborated that the plaintiff was involved in Allsup's physical assault. The report also explained that the offender tracking system documented the plaintiff as a member of the Imperial Gangsters, a group under the Latin Folk umbrella; the plaintiff was positively identified by institutional graphics; and the unit B shower log verified that the plaintiff and Allsup were in the showers that day. The report indicated that, although the plaintiff had pled not guilty, claimed that he was not at the showers that day, and claimed that his former cellmate would corroborate his statement, the cellmate was contacted, but he did not recall anything about that day. The report also indicated that Allsup was brought in as a witness, but he did not remember anything from that day either. Accordingly, the final summary report provided a sufficient statement of the reasons for the committee's decision and included a summary of the plaintiff's statements in his defense. Thus, the record does not show that the adjustment committee's final summary violated either the plaintiff's due process rights or the Department's regulations.

16

¶ 37                    F. Some Evidence Standard

¶ 38    To find an inmate guilty of a charged offense, the adjustment committee must be reasonably satisfied that there is some evidence that the offender committed the offense. 20 Ill. Adm. Code 504.80(k)(1); *Knox*, 2012 IL App (4th) 110325, ¶ 16. This standard only requires that the decision not be arbitrary or without support in the record. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). In reviewing a decision for "some evidence," courts are not required to conduct an independent examination of the entire record, assess witness credibility, or weigh the evidence. *Id*. Instead, the court should determine whether the prison disciplinary board's decision had some factual basis. *Id*. While this evidence must bear some indicia of reliability, once the meager threshold has been crossed, our inquiry ends, and we will not reverse the disciplinary board's decision. *Scruggs*, 485 F.3d at 941. Evidence demonstrating only a 25% likelihood of guilt has been found sufficient. *Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992). A disciplinary report alone provides "some evidence" for the disciplinary decision where the report describes the incident in sufficient detail. *Id*. Also, prison disciplinary authorities may rely on statements by confidential informants, so long as there is some indication that the statements are reliable. 20 Ill. Adm. Code 504.80(m)(1)(A)(ii); *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985).

¶ 39    Here, the adjustment committee's decision was supported by some evidence. The committee's final summary report was based upon the disciplinary report, provided detailed information about the incident, included statements from two confidential sources, and explained that the confidential sources were deemed credible due to their corroborated

17

statements given during the investigation. This evidence was further supported by the offender tracking system, which documented the plaintiff as a member of a group under the Latin Folk umbrella, and by the shower logs, which verified that the plaintiff was in the shower along with Allsup on the date in question. Although the final decision was worded similarly to the January 2013 disciplinary report, this does not show that the "some evidence" requirement was not satisfied. In the August 2017 proceedings, the committee considered much of the same evidence as in the earlier proceedings because it involved the same incident and the same witnesses. Thus, there was undoubtedly some evidence upon which the committee based its final decision, and the evidence relied upon was documented in the summary report. Accordingly, we find that the adjustment committee's decision was supported by some evidence.

¶ 40                          G. Summary

¶ 41    After carefully considering the record, we conclude that the plaintiff failed to demonstrate a due process violation in his August 2017 disciplinary proceedings. The circuit court's March 6, 2017, order requiring that the adjustment committee provide the plaintiff with a new hearing with all procedural due process, including advance notice of the amended charges and an opportunity to present witnesses, was satisfied. The plaintiff has received a new hearing in accordance with that order. Accordingly, based on the above reasoning, we find the disciplinary proceedings met minimum due process requirements, and the court's finding that its March 2017 order had been complied with is affirmed.

¶ 42                         III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the circuit court's judgment.

18

¶ 44    Affirmed.